1  Scott H. Zwillinger (019645)
2  Shaun T. Kuter (028278)
   Paul J. Vaporean (032370)
3  Goldman & Zwillinger PLLC
   17851 North 85th Street, Suite 175
4  Scottsdale, AZ 85255-6567
5  Main: (480) 626-8483
   Facsimile: (480) 502-7500
6  E-mail: docket@gzlawoffice.com
7  Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Steven Cutler, Individually, and as Administrator of the Estate of David A. Cutler, Deceased, on behalf of himself and on behalf of all beneficiaries of the Estate of David A. Cutler, Deceased, and Renee Luddington Cutler, <br><br> Plaintiffs, <br><br> v. <br><br> Mark D. Napier, Sheriff of Pima County, Arizona, in his official capacity, Rural/Metro Fire Dept., Inc., an Arizona for profit corporation, Keith Barnes and Jane Doe Barnes, his spouse, Grant Reed and Brittany Reed, <br><br> Defendants. | Case No.: CV-18-00383-TUC-FRZ <br><br><br> **FIRST AMENDED COMPLAINT** |

1

Plaintiffs Robert Steven Cutler, Individually and as Administrator of the Estate of David A. Cutler, Deceased, and Renee Luddington Cutler, by and through their attorneys of the firm of Goldman & Zwillinger PLLC, for their causes of action against Defendants, hereby allege as follows:

## THE PARTIES

1. Plaintiff Robert Steven Cutler ("Robert") is an individual and a resident of Mooresville, in Iredell County, North Carolina.

2. Plaintiff Renee Luddington Cutler ("Renee") is an individual and a resident of Mooresville, in Iredell County, North Carolina.

3. David A. Cutler ("David"), now deceased, was at all times relevant to this Complaint a resident of North Carolina.

4. Robert is the Administrator of David's estate, as appointed by the court in the North Carolina action: *In the Matter of the Estate of David Alexander Cutler, Deceased*, in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, File Number 18 E 538 (the "Estate").

5. Robert and Renee are David's parents. Robert, individually and as Administrator of David's Estate, and Renee, shall be jointly referred to in this First Amended Complaint ("FAC") as "Plaintiffs".

6. Defendant Mark D. Napier is the publicly elected Sheriff of Pima County, Arizona and shall be referred to in this FAC as "PCA Sheriff".

7. PCA Sheriff served as Sheriff of Pima County at all times relevant to this FAC.

8. PCA Sheriff acts by and through his officials, subordinate fellow employees, and agents, and is PCA Sheriff is vicariously liable for the acts and omissions of all such persons, including, without limitation, Defendant Keith Barnes.

9. Defendant Keith Barnes ("Defendant Barnes" or "Barnes") was at all times relevant to this FAC a sworn deputy sheriff employed by Pima County in the Pima County Sheriff's Department ("PCSD") under the direction and control of PCA Sheriff.

10. In all of his acts and omissions as a deputy sheriff relevant to this FAC, Barnes acted on behalf of and subordinate to PCA Sheriff.

11. Barnes was assigned PCSD Badge Number 1250, and at all times relevant to this FAC was acting pursuant to authority and color of law pursuant to his position with PCSD and for which PCA Sheriff is vicariously liable.

12. Former Defendant and now substituted-out non-party Pima County, Arizona, a chartered county of the State of Arizona ("Pima County"), is obligated to defend PCA Sheriff and Barnes in this action and is obligated to satisfy any and all judgments entered against PCA Sheriff and/or Barnes in this action.

13. Defendant Rural/Metro Fire Dept., Inc. ("Rural Metro") is a for profit Arizona corporation, authorized to operate in Arizona, and it operates in various locations in Arizona, including in parts of Pima County.

14. Rural Metro applied for and was granted by the State of Arizona, Department of Health Services, a Certificate of Necessity ("CON") for Rural Metro to provide certain emergency services, including, but not limited to fire-fighting, emergency rescue, emergency medical services and transportation in certain areas of Pima County.

15. As a for profit corporation, Rural Metro sought and maintained its CON and provided, among other services, emergency medical services, as a business activity from which it could earn a profit for its owners.

16. Rural Metro's business model as permitted by the State of Arizona, is to charge the public for its services by two methods:
   a. Entering into subscription contracts with residents by which the subscriber pays a periodic fee to Rural Metro and in exchange Rural Metro provides its services when needed, without billing the paying resident for those services, or
   b. For non-subscribers, billing for services, including, but not limited to emergency medical services, as they are provided.

17. At all times relevant to this FAC, Rural Metro's service area pursuant to the subject CON included certain portions of unincorporated Pima County, just east of the city limits of the

3

City of Tucson, including, but not limited to, the locations identified by street/mailing addresses including 11260 through 11550 East Twin Hills Trail, Tucson, AZ 85748, 11311 through 11511 East Calle Catalina, Tucson, AZ 85748 and all parcels of land immediately adjacent to any of these addresses.Defendant Grant Reed ("Defendant Reed" or "Reed") is a paramedic who at all times relevant to this FAC was employed by Rural Metro, was an agent or employee of Rural Metro and was assigned by Rural Metro to perform paramedic services in Pima County.

18. Defendant Brittany Reed was at all times relevant to this FAC the spouse of Reed.

19. The acts and omissions of Defendant Barnes and of Defendant Reed as described in this FAC were for the benefit and furtherance of their respective marital communities, if any, and thus their respective martial communities, if any, are liable for their acts and omissions. Plaintiffs are unaware of the true name of Barnes' spouse, if any, and have designated the potential spouse as "Jane Doe" in the caption of this matter. The true name of this defendant will be substituted upon discovery of the same.

## JURISDICTION AND VENUE

20. Plaintiffs bring this action for violations of the Fourteenth Amendment of the United States Constitution, Title 42 United States Code, Section ("U.S.C. §") 1983, Arizona common law and Arizona Revised Statutes ("A.R.S."), including but not limited to A.R.S. Sections 12-611, *et seq.*

21. Plaintiffs filed the initial Complaint in the Pima County Arizona Superior Court on May 24, 2018, and that court numbered the action as case number C20182621 ("State Case").

22. On August 7, 2018, former Defendant and now non-party Pima County (the predecessor Defendant for the substituted-by-this-FAC Defendant PCA Sheriff), removed the State Case to this Court, asserting jurisdiction in this Court pursuant to 28 U.S.C. §1343(a)(3) and asserting that the State Case was removable to this Court pursuant to 28 U.S.C. § 1441 and 1446 ("Removal").

23. Plaintiffs did not and do not oppose the Removal.

24. This FAC "substitutes" Defendant PCA Sheriff for the now-to-be former defendant and now-to-be non-party Pima County based on the objections of Pima County and its assertion that Pima County is not a proper defendant and that PCA Sheriff is the proper defendant for the claims raised by Plaintiffs initially against Pima County.

25. Newly substituted Defendant PCA Sheriff and now to-be-former Defendant Pima County acknowledge that, other than the identity of the named defendant, the law to be applied in this action does not differ whatsoever, regardless of which of them, PCA Sheriff or Pima County is named as a defendant.

26. Defendants all resided in Pima County at the time of the accrual of the causes of action, and all acts and omissions by them occurred in Arizona, so this Court has personal jurisdiction over every Defendant and, upon Removal, venue in this Court is proper for this FAC pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §82.

## GENERAL FACTUAL ALLEGATIONS

27. David died on June 5, 2017, while in the custody and care of Defendants.

28. At the time of his death, David was 23 years old, six feet one inch in height and weighed approximately 132 pounds.

29. David was a student at Western Carolina University, in Cullowhee, North Carolina, where he studied business and psychology.

30. At the time of the events referenced in this FAC, David was in Tucson visiting his younger brother during a voluntary break in studies taken by David for the spring and summer 2017 academic terms.

31. On the morning of June 5, 2017, while David was driving his Jeep through the desert near Tucson, the Jeep crashed, caught fire and exploded.

32. David escaped the crash, fire and explosion of the Jeep, taking off on foot away from the burning Jeep.

33. At or around 9:30 A.M. PCSD deputies and Rural Metro fire and medical personnel were dispatched to the location of the burning Jeep.

5

34. By the time PCSD and Rural Metro personnel arrived at the Jeep, David was not to be found and the vehicle was nearly completely engulfed in flames.

35. Defendants did not adequately search for David.

36. Defendant Barnes was one of the PCSD deputies to respond to the Jeep fire.

37. At or before 11:00 A.M., a nearby resident, Kristin Powell ("Ms. Powell"), while inside her home heard someone screaming for help, a person later confirmed to be David, but Ms. Powell was unable to see anyone at that time.

38. At or around 11:30 A.M., Ms. Powell again heard the person screaming for help, and, this second time, saw the person (David) naked on a hill near her home, and she called 9-1-1 to report her observations and summon emergency assistance for David.

39. Among others, Defendant Barnes responded to the 9-1-1 call by Ms. Powell regarding the sighting by her of David, and Barnes was the first of the first responders on the scene.

40. Before and during his response to the call for help, Defendant Barnes assumed David was a victim of and had escaped the Jeep crash, fire and explosion to which Defendant Barnes had responded more than two hours earlier.

41. Upon his arrival on scene near Ms. Powell's residence, at about 11:30 A.M., Defendant Barnes observed David naked, on the hill and screaming for help.

42. At the time of Defendant Barnes' first observation of David, David had been in the desert for more than two hours, in full-sun, without shelter or hydration and the temperature was approaching 100 degrees Fahrenheit.

43. At no time during his interaction with David did Defendant Barnes provide or offer water to David.

44. Defendant Barnes shouted to David that he was from the Sheriff's Department and ordered David to come to him.

45. David yelled something back, but Defendant Barnes claims he was unable to understand him.

46. Defendant Barnes began to walk up the hill with his club/baton-like weapon out of its holster and in his hand.

6

47. As Defendant Barnes neared David's location, David did not approach or run away from Barnes, and David did not make any aggressive or threatening movements.

48. As Defendant Barnes approached David, Defendant Barnes, without reason or justification, pulled out his pepper spray and shouted, "Don't make me spray you!"

49. As Defendant Barnes approached David, in addition to confirming that David was completely naked, Barnes plainly saw that David was a very thin young man who was holding no weapon and was in obvious distress from the Jeep accident, fire and explosion, and from his exposure to the sun, heat and desert terrain.

50. Defendant Barnes observed David as being "beet red" and "firebox red" from sunburn, bleeding from various parts of his body and showing signs of physical injuries.

51. David attempted to start a conversation with Defendant Barnes.

52. Defendant Barnes asked David what was going on with the car, and David said that he got into an accident.

53. Without reason or justification, Defendant Barnes demanded that David allow himself to be placed in handcuffs.

54. David complied with Defendant Barnes' command and allowed himself to be handcuffed without resistance.

55. From this point forward, David was restrained at all times and presented no threat to himself, Defendant Barnes or anyone else.

56. Instead of immediately attempting to cool or shelter David and instead of calling in the paramedics, Defendant Barnes ordered David to walk back down the hill.

57. Without cause and with knowledge that David was injured, in distress and in need of immediate care, Defendant Barnes grabbed David's arm and slammed him to the burning hot ground.

58. As soon as David's distressed, injured and naked body hit the ground, he started to shake and yell in pain from the extreme heat of the ground and from the rocks and cactus needles on the ground.

59. In reaction to the pain caused by his body being forced to the ground by Barnes, David began to roll around.

60. Defendant Barnes again grabbed David's arm and slammed him to the ground.

61. Without regard for the temperature of the desert ground and the existence of rocks and cactus needles, without regard to David's condition and without regard for his need for immediate medical care, Defendant Barnes forced David against the ground.

62. Defendant Barnes kicked David in the face, opening a gash under David's eye.

63. David's blood stained Defendant Barnes' boot.

64. Defendant Barnes instructed another deputy to bring additional restraint equipment to further restrain David.

65. Defendant Barnes and other deputies bound David in a manner commonly referred to as being "hogtied", connecting the previously applied handcuffs, which bound David's wrists together behind his back, to a "Ripp" restraint, which consisted of ankle-cuffs binding David's ankles together and a leash which connected to the ankle cuffs and to handcuffs, so that David was bound by a connected set of devices with handcuffs, ankle cuffs and a strap running the length of David's torso, behind David's back.

66. Defendant Barnes and the other deputies stood over David as David strained to breath and strained to endure the excruciating pain from the heat, the sun and his injuries.

67. Defendant Barnes and the other deputies held David's body to the ground by, at minimum, placing their boot on David's feet, pressing David's feet, ankles and legs to the burning desert ground.

68. None of the PCSD personnel provided or offered water to David.

69. Defendant Barnes called for back-up to get David down from the hill.

70. Defendant Barnes did not tell anyone that David was suffering from noticeable heat-related distress.

71. Defendant Barnes told responding deputies, fire personnel, and paramedics that David was "combative" and "delusional."

72. Defendant Barnes requested for the sedation of David, before and after David had been hogtied.

73. Defendant Reed, along with an emergency medical technician, walked up the hill to the location at which Defendant Barnes and the other deputies had David in custody, hogtied, on the burning ground.

74. When Reed arrived at David's side, David was on his bare stomach with the entire front of his body in direct contact with the scorching ground, writhing in pain from the contact of his bare skin with the ground and breathing rapid shallow breaths.

75. When he arrived at David's side, Defendant Reed immediately injected David with two doses of Ketamine, one in each of David's biceps.

76. Reed performed no meaningful assessments of David's condition before injecting David with Ketamine.

77. Defendant Reed at no time offered or provided water to David.

78. Defendant Reed did not treat David's obvious and primary medical condition: hyperthermia.

79. Nearly immediately after the Ketamine injection by Reed, at or around 12:18 P.M., David's breathing slowed, and he went still.

80. Nearly immediately after the Ketamine injection, David went into respiratory and cardiac arrest.

81. After David stopped breathing and after his heart stopped, someone removed only the handcuffs, and David's lifeless body was strapped onto a backboard, into a "Stokes" basket.

82. Paramedics and fire crew walked David's lifeless body down the hill.

83. At the bottom of the hill, about an hour after David's first contact with Defendant Barnes, paramedics performed CPR on David.

84. David remained unresponsive so paramedics administered electric shock.

85. At some point David was given 6mg of Narcan by Rural Metro.

86. At some point David was given 300mg of Amiodarone by Rural Metro.

87. At some point David was given 4mg of Epinephrine by Rural Metro.

88. Rural Metro transported David to Tucson Medical Center Emergency Department, where resuscitation efforts continued, but those efforts failed.

89. David was pronounced dead at 1:08 P.M. on June 5, 2017.

90. The cause of death was hyperthermia and the administering of Ketamine.

91. David's body temperature reported it as 102.9 degrees Fahrenheit.

92. David had blood everywhere on his body.

93. David's feet were torn and bloody.

94. At the time of his death, David had cuts, scrapes, and abrasions on his face and neck, throat, chest, torso, back, arms, and scrotum.

95. David was found with several cactus needles on the right rib cage area, along with other items of vegetation strewn on his body.

96. Horizontal ligature marks/linear abrasions and imprints were visible on David's neck.

97. Neither Barnes nor anyone else reported any reason for the existence of the ligature marks on David's neck.

98. In the months, or longer, before his death, David always wore a particular unique necklace.

99. David's necklace was never found, either at the scene of the fire or distress calls, or anywhere else.

## COUNT ONE

### Violation of Civil Rights Under the Fourth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1983 (Defendant Barnes)

100. Plaintiffs re-allege and incorporate by reference each of the previous allegations as though fully set forth herein.

101. The Fourth Amendment of the United States Constitution, which applies to Defendant Barnes pursuant to the Due Process Clause of the Fourteenth Amendment, forbids one who acts under color of law using force that is excessive or unjustified.

102. The Eighth Amendment of the United States Constitution, which applies to Defendant Barnes pursuant to the Due Process Clause of the Fourteenth Amendment, forbids

one who acts under color of law from being deliberately indifferent to the serious medical needs of individuals in their custody and control.

103. The Fourteenth Amendment of the United States Constitution forbids one who acts under color of law from depriving anyone of life or liberty without due process of law.

104. At all relevant times, Defendant Barnes was acting under color of law.

105. At all relevant times, David was in the custody and control of Defendant Barnes.

106. At all relevant times, David was confined with injuries to his naked body, in handcuffs, on a hot day, held to the scorching, rocky and cactus ridden ground under the control of Defendant Barnes even though David obviously did not pose any threat of harm and was in obvious need of treatment for hyperthermia and/or heat-related distress, including, but not limited to, water, cooling efforts, shelter, protection from the desert ground and other medical care.

107. Among other things, Defendant Barnes knew that David was injured, possibly burned from the car fire, dehydrated and in need of water and was suffering from hyperthermia and/or heat-related distress.

108. Defendant Barnes's conduct in this regard was objectively unreasonable and was undertaken with willful, reckless, and malicious indifference to the constitutional rights and liberty interests of David and with no regard to the likelihood that harm would and did result and that David would and did suffer extreme unnecessary pain and death that bore no legitimate law enforcement purpose.

109. The wrongful conduct of Defendant Barnes constitutes violations of 42 U.S.C. § 1983 in that, with deliberate and callous indifference, he deprived David of his Fourth, Eighth, and/or Fourteenth Amendment rights under the United States Constitution by depriving David of necessary medical care and exacerbating and causing serious injury while David was detained.

110. As a direct and proximate result of Defendant Barnes' deliberate indifference, David died and suffered extraordinary pain and Plaintiffs suffered damages.

111. As a direct and proximate result of Defendant Barnes' deliberate indifference, Plaintiffs have forever lost the liberty interest guaranteed by the Fourteenth Amendment to enjoy the companionship, society, and support of David.

112. The acts and omissions of Defendant Barnes were of such a nature as to entitle Plaintiffs to an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

113. Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorney fees and all litigation and court costs.

## COUNT TWO

### Wrongful Death Pursuant to A.R.S. § 12-611 (All Defendants)

114. Plaintiffs re-allege and incorporates by reference each of the previous allegations as though fully set forth herein.

115. Defendants had a duty to provide necessary care to David for injuries suffered before and exacerbated while in Defendants' custody.

116. Defendants breached their duty to David, as described in this FAC.

117. At all relevant times, Defendant Barnes had a duty to exercise ordinary care towards David, including a duty to provide necessary medical care or water for a person injured by a deputy in the performance of their duties.

118. Defendant Barnes breached that duty by, without limitation, using excessive and unjustified force, not providing immediate care for David's heat-related distress, and requesting sedation when he knew or should have known it was unnecessary and potentially dangerous.

119. Defendant PCA Sheriff is vicariously liable for the acts and omissions of the employees of PCSD, including without limitation Defendant Barnes, as to any claims that are asserted by Plaintiffs that arise under Arizona common and statutory law because, at all relevant times, Defendant Barnes was acting within the course and scope of his employment with PCA Sheriff and/or PCSD and/or non-party Pima County.

120. Defendant Reed had a duty to exercise ordinary care towards David, including a

duty to provide necessary medical care for a person in custody.

121. Defendant Reed breached that duty by, without limitation, failing to provide water to David and by injecting David with a sedative without due consideration of David's medical condition.

122. Defendant Rural Metro is vicariously liable for the acts and omissions of its employees and agents, including without limitation Defendant Reed, as to any claims that are asserted by Plaintiffs that arise under Arizona common and statutory law because, at all relevant times, Defendant Reed was acting within the course and scope of his employment with Rural Metro.

123. As a direct and proximate result of Defendants' negligence, David died and Plaintiffs suffered damages to be proven at trial.

## JURY TRIAL DEMAND

124. Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against Defendants and in favor of Plaintiffs, as follows:

    a. For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

    b. For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct of Defendants as alleged in this FAC and to deter such conduct in the future by Defendants and others;

    c. For pre- and post-judgment interest to the extent provided by law;

    d. For attorney fees and litigation and court costs as permitted by 42 U.S.C. § 1988 and as otherwise authorized by all other applicable law; and

    e. For such other relief as this Court may deem just and proper.

**RESPECTFULLY SUBMITTED** this June 10, 2019.

**GOLDMAN & ZWILLINGER PLLC**

/s/ *Paul J. Vaporean*
Scott H. Zwillinger
Shaun T. Kuter
Paul J. Vaporean
17851 North 85th Street, Suite 175
Scottsdale, AZ 85255
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June, 2019, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on all counsel of record via the Court's CM/ECF system.

/s/ *L. Simonini*