1
*AUDILETT LAW PC*
335 NORTH WILMOT RD SUITE 500
2
TUCSON, ARIZONA 85711-2636
(520) 748-2440
3
Email: daa@audilettlaw.com

4
Daryl A. Audilett, Esq.
State Bar No. 009007; PCC No. 2036
5
Attorney for Defendants Napier and Barnes

6
IN THE UNITED STATES DISTRICT COURT
7
FOR THE DISTRICT OF ARIZONA
8

9   Robert Steven Cutler, individually and as     NO. CV-18-00383-TUC-FRZ
    Administrator of the Estate of David A.
10  Cutler, deceased, on behalf of himself and    ANSWER OF SHERIFF MARK
    on behalf of all beneficiaries of the Estate  NAPIER AND DEPUTY KEITH
11  of David A. Cutler, deceased, and Renee       BARNES AND JANE DOE BARNES
    Luddington Cutler;                            TO PLAINTIFFS' FIRST AMENDED
12                                                 COMPLAINT
13              Plaintiffs,
                                                   (Jury Trial Requested)
14  vs.
15
    Mark D. Napier, Sheriff of Pima County,       (The Honorable Frank R. Zapata)
16  Arizona, in his official capacity; Rural
    Metro Fire Dept., Inc., an Arizona for
17  profit corporation; Keith Barnes and Jane
    Doe Barnes, his spouse; Grant Reed and
18  Brittany Reed;
19
                Defendants.
20

21          Defendants Sheriff Napier, Deputy Keith Barnes and Jane Doe Barnes answer the First
22
    Amended Complaint as follows:
23
24                                   **THE PARTIES**
25    1.  Admit upon information and belief that Robert Cutler lives in North Carolina.
26

2. Admit upon information and belief that Renee Cutler lives in North Carolina.

3. Without knowledge about the residency of decedent David Cutler.

4. Without knowledge about the role that Robert Cutler has in the Estate of David Cutler.

5. Admit upon information and belief that Robert Cutler and Renee Cutler are decedent David Cutler's parents.

6. Admit that Sheriff Mark Napier is the elected sheriff of Pima County.

7. Admit that Sheriff Napier was the Pima County Sheriff when the event that gives rise to this lawsuit occurred.

8. Admit that Sheriff Napier has vicarious and respondeat superior liability for the conduct of his employees to the extent that those employees engaged in wrongful conduct and were at fault for injury to another, which these Defendants deny.

9. Admit that Deputy Barnes was a Pima County Deputy who responded to the Jeep fire and encountered David Cutler on or near the top of a relatively steep hill and rocky hilltop.

10. Admit that Deputy Barnes at all times acted in his official capacity and in the course and scope of his employment. Deny that Deputy Barnes engaged in any wrongful conduct.

11. Admit that Deputy Barnes at all times acted in his official capacity, and under color of law. Deny that Deputy Barnes engaged in any wrongful conduct.

12. Admit that non-party Pima County is defending Sheriff Napier and Deputy Barnes and will pay any judgment (if any) against them that survives post-trial motions and

appeals, if any.

13. Admit on information and belief that Rural Metro is an emergency fire and medical service provider in Pima County.

14. Without knowledge, but upon information and belief admit that Rural Metro has all the qualifications and certifications necessary to provide emergency fire and medical services in Pima County.

15. Without knowledge about the inner workings of Rural Metro's business activities.

16. Without knowledge about the inner workings of Rural Metro's business activities.

17. Admit that Rural Metro's service area encompasses the area where the events related to this lawsuit occurred.

18. Without knowledge about the marital relationship of Grant Reed.

19. Deny. Deputy Barnes acted in his official capacity. The marital community issue is irrelevant and antiquated. Any judgment against Deputy Barnes that survives post-trial motions and appeals will be paid, without regard to marital community.

## JURISDICTION AND VENUE

20. Deny violations of civil rights or other wrongful conduct.

21. Admit that the original Complaint was filed in state court.

22. Admit that the lawsuit was removed to Federal Court.

23. Admit that Plaintiffs did not object to the removal to Federal Court.

24. Admit that Sheriff Napier, and not Pima County, is the proper party defendant in this lawsuit.

25. Admit that Sheriff Napier, and not Pima County, is the proper party defendant and that the law to be applied to this action should not differ.

26. Admit personal jurisdiction over Defendants Sheriff Napier and Deputy Barnes.

### **GENERAL FACTUAL ALLEGATIONS**

27. Admit that David Cutler died on June 5, 2017.

28. Admit that David Cutler was 23 years old. His height and weight are recorded in the autopsy report.

29. Deny. It does not appear that David Cutler was a student at the time of his death.

30. Admit that David Cutler was living with his brother Benjamin Cutler at the time of his death. Without knowledge the reasons why that was occurring.

31. Admit that David Cutler drove into the desert, up the side of a hill, crashed the Jeep and it caught on fire and burned.

32. Admit that David Cutler left the fire scene, took off all his clothes, including his shoes, and spent approximately two hours naked in the desert, in rough terrain, before he was found by Deputy Barnes.

33. Admit that Rural Metro Fire and Pima County Sheriff's Department deputies were dispatched to the Jeep fire.

34. Admit that David Cutler was not found at the location of the Jeep fire.

35. Deny.

36. Admit that Deputy Barnes responded to the Jeep fire.

37. Admit that Kristin Powell heard someone screaming, the time and words spoken are

4

recorded in the investigation reports, and/or the 911 call by Kristen Powell.

38. Admit that Kristin Powell heard someone screaming and saw a person naked on a hilltop near her home. She called 911 and reported that.

39. Admit that Deputy Barnes responded to the call for service and eventually made his way to the hilltop to encounter the naked David Cutler.

40. Whether David Cutler was associated with the Jeep fire had yet to be established at the time that Deputy Barnes encountered David Cutler.

41. Admit that Deputy Barnes saw David Cutler naked on the hill. Deputy Barnes observed David Cutler assume a "Christ on the cross" pose. Later David Cutler talked about if we don't kill the devil we will never be able to finish the wars. He also said that he wants to say goodbye to his mom. When asked if he could walk down the hill, David Cutler said, "I don't want to go back."

42. Admit that David Cutler had been in the desert, naked, for approximately two hours. The temperatures are a matter of record.

43. Deputy Barnes did not have water available to offer to David Cutler.

44. Admit that Deputy Barnes requested that David Cutler come down the hill. David Cutler took off running to the east.

45. Deputy Barnes' description of the event is contained in his recorded statement and in the associated written transcript. David Cutler yelled back, but Deputy Barnes could not understand what he was saying.

46. Deny. At some point Deputy Barnes did have his expandable baton out, but he never

threatened David Cutler with it. As Deputy Barnes advanced up the hill, he would yell to David Cutler for David Cutler to come towards Deputy Barnes. Deputy Barnes also yelled to David Cutler that he, Deputy Barnes, was "here to help."

47. True that David Cutler did not run away at this time. Instead, David Cutler put his head down and started yelling "just decapitate me, just decapitate me."

48. Admit that Deputy Barnes put away his expandable baton and pulled out his pepper spray and said to David Cutler, words to the effect of, don't make me spray you.

49. Objection: Argumentative. Deny as described. What happened is this. Deputy Barnes observed David Cutler naked and covered in blood from head to toe. Deputy Barnes put David Cutler in handcuffs and asked him if he could walk down the hill. David Cutler pulled away from Deputy Barnes like he was going to go over the other side of the hill. So, Deputy Barnes took David Cutler to the ground. Then David Cutler started talking about the bombing in Iraq. Then David Cutler started saying that he is sorry for his parents, that he wants to say goodbye to his mom. David Cutler starts talking about the devil and if we don't kill the devil, we'll never be able to finish the wars.

50. Admit that Deputy Barnes saw David Cutler as beet red and as red as a firebox. There was no shade to put David Cutler under.

51. The conversation between David Cutler and Deputy Barnes is described in paragraph 49 above.

52. Admit that David Cutler said something about his car.

53. Deny.  Deputy Barnes placing David Cutler in handcuffs was reasonable and necessary to protect the safety and security of David Cutler and Deputy Barnes.

54. Admit that David Cutler did comply with being handcuffed.

55. Deny.  The threat posed by David Cutler was to himself, potentially to the deputies and potentially to the Rural Metro responders.

56. Deny.  Deputy Barnes asked David Cutler if he could walk down the hill.

57. Deny.  Admit that Deputy Barnes put David Cutler on the ground.  The suggestion that Deputy Barnes "slammed" David Cutler to the ground is false, and without any evidence.

58. Objection:  Argumentative and speculative.  David Cutler tried to roll himself down the hill.  He started kicking and flailing about.

59. The videos do show David Cutler writhing on the ground, no doubt due to the effects of LSD.

60. Deny that Deputy Barnes ever slammed David Cutler to the ground.

61. Deny.  Taking David Cutler to the ground was necessary for Cutler's own safety.

62. Deny.  There is no evidence supporting the allegation that Deputy Barnes kicked David Cutler in the face, opening a gash under his eye.

63. The blood stain on Deputy Barnes' boot appears because David Cutler was banging his face against rocks or a rock outcrop, or rock bed, and Deputy Barnes had the compassion and foresight to place the front of his boot between David Cutler's face and the rocks / outcrop that he was banging his face against.  That is how the blood

stain got onto the top of Deputy Barnes' boot.

64. The RIPP restraint was requested, and that was a reasonable request designed to preserve the safety and security of David Cutler and other responders.

65. Deny. David Cutler was not hogtied.

66. All the actions by the deputies were designed to protect David Cutler from his own actions and to protect other responders.

67. All the actions by the deputies were designed to protect David Cutler from his own actions and to protect other responders.

68. None of the PCSD deputies had water available to provide to David Cutler.

69. Uncertain whether Deputy Barnes called for backup, or other deputies were already headed there due to the radio traffic associated with this call.

70. After two hours in the desert in June 2017 in rough and rocky terrain, it was obvious that David Cutler may be suffering from heat and whatever drugs he had taken.

71. David Cutler was combative and delusional.

72. Deny. David Cutler was not "hogtied." He was combative and delusional. Sedation was proper.

73. Deny that David Cutler was "hogtied" or that the ground was "burning."

74. Deny that David Cutler was writhing in pain from the ground. David Cutler was indeed writhing on the ground from his two hours naked in the desert in rough and rocky terrain, and he was restrained for his own safety and the safety of the first responders.

75. Admit that Reed injected David Cutler with Ketamine.

76. Deny. Reed performed a reasonable and appropriate assessment before he injected David Cutler with Ketamine.

77. Water was not available on the rough and rocky hilltop where David Cutler was encountered.

78. Deny. Reed properly assessed the situation and acted accordingly and appropriately.

79. David Cutler did calm down after the Ketamine injections, which was the purpose of the injections.

80. Without knowledge. Whether David Cutler went into respiratory or cardiac arrest is a subject for expert testimony.

81. Admit that David Cutler was put in a Stokes basket for transport down the rough and rocky hilltop.

82. Admit that David Cutler was taken down the rough and rocky hillside in a Stokes basket equipped with an all-terrain wheel.

83. David Cutler was indeed provided CPR after his breathing and pulse stopped. Where and when that occurred is a question of fact.

84. Without knowledge. This is a question of fact relative to the paramedic care provided.

85. Admit that David Cutler was given Narcan.

86. Admit that David Cutler was given Amiodarone and that all reasonable efforts were taken to revive David Cutler.

87. Admit that David Cutler was given Epinephrine and that all reasonable efforts were

taken to revive David Cutler.

88. Admit that David Cutler was taken to Tucson Medical Center where he was pronounced dead.

89. Admit that David Cutler was pronounced dead at TMC.

90. Deny. The autopsy report indicates that the cause of death was hyperthermia and LSD.

91. Admit that the tympanic temperature of David Cutler at some point in time was 102.9 degrees.

92. Admit that David Cutler had evidence of blood, bruising, abrasions, scrapes and cuts over many parts of his body, no doubt from wandering naked for about two hours in rough, rocky, and brushy terrain.

93. Admit that the bottoms of David Cutler's feet were severely compromised, with skin missing, all from wandering naked and without shoes for about two hours in rough, rocky, and brushy terrain.

94. Admit that as shown in video and photos, David Cutler had many, many cuts, scrapes, and abrasions all over many parts of his body, all from wandering naked and without shoes for about two hours in rough, rocky, and brushy terrain.

95. The autopsy report documents the foreign articles on David Cutler's body.

96. Admit that there were ligature marks on David Cutler's neck and that family members attributed those to a leather necklace type of article that had some sort of crystal hanging from it.

97. The reason for the ligature marks was provided by family members as stated in paragraph 96, above.

98. See paragraph number 96, above.

99. Admit that the necklace was never found. There was no way to trace David Cutler's wandering path through the rough, rocky, hilly, brushy terrain where he spent about two hours under the influence of LSD.

## COUNT ONE

## Violation of Civil Rights Under the Fourth, Eight, and Fourteenth Amendments and 42 U.S.C. 1983 (Defendant Barnes)

100. Restate the above as though fully set forth below.

101. Barnes did not use excessive or unjustified force.

102. Barnes was not deliberately indifferent to David Cutler.

103. Barnes did not deprive David Cutler of life or liberty.

104. Admit that at all relevant times, Barnes was acting under color of law.

105. Deny. There were times when David Cutler was in the custody and control of Rural Metro.

106. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help

David Cutler.

107. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

108. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

109. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

110. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by

crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

111. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

112. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler. And further, punitive damages are prohibited against public employees and public entities on the state law claims. Punitive damages are prohibited against public entities on the federal law claims.

113. Deny any wrongful conduct. David Cutler was restrained for his own protection and the protection of responders. David Cutler put himself into his position by crashing and burning his Jeep, shedding all his clothing and shoes, and wandering in the desert

for about two hours through rough, rocky, brushy terrain in close to 100-degree ambient temperatures. All reasonable efforts were taken by responders to help David Cutler.

## COUNT TWO

### Wrongful Death Pursuant to A.R.S. 12-611 (All Defendants)

114. Restate the above as though fully set forth below.

115. Defendants fulfilled any and all legal duties to David Cutler.

116. Defendants did not breach any duty to David Cutler.

117. Defendants fulfilled any and all legal duties to David Cutler.

118. Deny.

119. Admit that the Sheriff has vicarious liability for his deputies on state law claims, but deny any wrongful conduct by his deputies. Admit that Barnes acted in the course and scope of his employment.

120. Deny that Reed did not exercise reasonable care.

121. Deny.

122. Deny wrongful conduct by Reed.

123. Deny.

## JURY TRIAL DEMAND

124. Defendant Sheriff Napier and Defendants Barnes also demand a jury trial.

## AFFIRMATIVE DEFENSES

125. Contributory negligence imputed to Plaintiffs and wrongful death beneficiaries.

14

Comparative fault imputed to Plaintiffs and wrongful death beneficiaries. Assumption of the risk imputed to Plaintiffs and wrongful death beneficiaries. Failure to mitigate damages imputed to Plaintiffs and wrongful death beneficiaries. Qualified immunity. Good faith immunity. Fault of others, namely the person named "Danny" that gave David Cutler the LSD. Immunity from punitive damages. Objectively reasonable conduct by law enforcement. No respondeat superior liability on the federal claims. No deliberate indifference. Failure to state a claim for which relief may be granted. On the state law claims, ARS 820.02(11) raises the standard of care to "gross negligence" for a law enforcement officer rendering emergency care in an emergency occurrence.

## GENERAL DENIAL

126.      Deny all allegations of the Complaint not specifically admitted herein.

**WHEREFORE,** these Defendants request that the Complaint against them be dismissed with prejudice and request that the Court award these Defendants their costs.

DATED this 1st day of July, 2019.

*AUDILETT LAW PC*


/s/ Daryl Audilett
_____
Daryl A. Audilett
Attorney for Defendants Napier and Barnes

1

2

CERTIFICATE OF SERVICE

3

   I hereby certify that on July 1, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

6

Scott Zwillinger, Esq.
Paul J. Vaporean
Goldman & Zwillinger, PLLC
17851 N. 85th Street, Suite 175
Scottsdale, AZ 85255
**Attorneys for Plaintiffs**

7

8

9

10

Galen H. Satterlee, Esq.
Scott Reynolds, Esq.
Sean Donlan, Esq.
LOWIS & GELLEN LLP
51 W.  Third Street, Suite E-240
Tempe, AZ 85281
**Attorneys for Rural Metro**
**Fire Department and Reeds**

11

12

13

14

15

16

By /s/ Karen Audilett
1666

17

18

19

20

21

22

23

24

25

26