**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Steven Cutler, | No. CV-18-00383-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendants. | |

Before the Court are three motions for summary judgment filed by Defendants Rural Metro/Metro Fire Department ("Rural Metro"), Grant Reed ("Reed") and Brittany Reed. (Docs. 117, 119, 121.) The motions are directed at the qualifications of Plaintiffs' expert witnesses, Dr. Stephen Thornton, Dr. Roy Taylor, and Guillermo Haro. The motions are fully briefed. (Response, Doc. 136; Reply, Doc. 148.)[1] As explained below, the motions as to Drs. Stephen Thornton and Roy Taylor will be denied. The motion as to Guillermo Haro will be held in abeyance pending further briefing.[2]

**I.     BACKGROUND[3]**

On June 5, 2017, David Cutler ("David") died while being rescued from a rugged area at the top of a hill in Pima County, Arizona. By the time he was located by Pima

---
[1] The Court has also reviewed the Affidavit of Scott Reynolds. (Aff. of Scott Reynolds, Doc. 150.)
[2] With the exception of the motion directed at Guillermo Haro (Doc. 119), the Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b).
[3] The facts of the case are detailed in the Court's Order on the Pima County Sheriff's Department Defendants' motion for summary judgment. The facts relevant to the instant motions are set forth below.

County Sheriff's Department ("PCSD") deputies, David had been wandering the desert for over two hours and he was naked and covered in abrasions. He was delusional and resisted the deputies' efforts to bring him down the hill to medical attention. Rural Metro responded to the scene after receiving a call from PCSD dispatch requesting that "meds" respond. During David's attempted rescue, Reed, a certified EMCT[4]-Paramedic with Rural Metro, injected David with Ketamine to sedate him. Plaintiffs' claim against Rural Metro and Reed arise out of Reed's actions during David's rescue.

## II. PLAINTIFFS' CLAIM AND THE DEFENSE MOTIONS

Plaintiffs are David's parents suing in their individual capacity and David's father is suing as administrator of David's estate. (First Am. Compl., Doc. 55.) They allege that by injecting David with Ketamine and failing to give David water, Reed was negligent and caused David's death. *Id*. at p. 13, ¶ 121. They assert a single negligence claim against Reed and Rural Metro under Arizona's wrongful death statute, ARIZ. REV. STAT. § 12-611. *Id*. at pp. 12-13. Defendants argue that Plaintiffs' expert witnesses—Dr. Thornton, Dr. Taylor and Guillermo Haro—are not qualified to offer expert testimony against Reed because they fail to meet the requirements of ARIZ. REV. STAT. § 12-2604, governing qualifications of expert witnesses. If Defendants are successful, the claim against Rural Metro and Reed fails as a matter of law.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is used "to isolate and dispose of factually unsupported claims." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when there is no genuine issue as to any material facts thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute of a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

---

[4] Emergency Medical Care Technician

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U. S. at 323. "If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence." *Eldridge-Murphy v. Clark County School Dist.*, No. 2:13-cv-02175-JCM-GWF, 2015 WL 224416, at *2 (D. Nev. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U. S. 144, 159-60 (1970)). "If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists." *Eldridge-Murphy,* 2015 WL 224416, at *2. (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"Ordinarily, in the absence of proceeding under Rule 56(d), a plaintiff's failure to provide a qualified standard-of-care expert would justify summary judgment for the defense." *Rasor v. Northwest Hosp., LLC*, 243 Ariz. 106, ¶ 31, 403 P.3d 572, 578 (Ariz. 2017) (citations omitted). *See also, Zappia v. Sodhi*, 1 CA CV 18-0743, 2020 WL 1026504 (Ariz. Ct. App. 2020) (unpublished); *Mann v. United States*, No. CV-11-8018-PCT-LOA, 2012 WL 273690, at *11 (D. Ariz. Jan. 31, 2012).

**IV.     ARIZONA LAW REGARDING MEDICAL NEGIGENCE**

"In medical malpractice actions, as in all Arizona negligence actions, a plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Mann*, 2012 WL 273690, at *6 (citing *Seisinger v. Siebel*, 220 Ariz. 85, 94, 203 P.3d 483, 492 (Ariz. 2009) (citation omitted); *Adeogba v. United States*, 2006 WL 2821668, *2 (D. Ariz. Sept. 27, 2006) (citing *Gipson v. Kasey*, 212 Ariz. 235, 129 P.3d 957, 960 (Ariz. Ct. App. 2006))). "In a medical negligence case, the 'yardstick' by which a physician's or other healthcare provider's compliance with his duty is measured is commonly referred to as the 'standard of care.'" *Mann*, 2012 WL 273690, at *6 (quoting *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492). "A plaintiff must prove negligence by presenting evidence that the healthcare provider fell below the applicable standard of care and that the deviation from the standard of care proximately caused the claimed injury." *Mann*, 2012 WL 273690, at *6 (citing *Ryan*

*v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 262 P.3d 863, 869–70 (Ariz. Ct. App. 2011) (citing ARIZ. REV. STAT. § 12–563); *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (Ariz. Ct. App. 1985) (expert medical testimony required to establish proximate cause unless a causal relationship is readily apparent to the trier of fact.)).

"Arizona courts have long held that the standard of care normally must be established by expert medical testimony." *Mann*, 2012 WL 273690, at *6 (quoting *Seisinger*, 220 Ariz. at 94, 203 P.3d at 492 (citations omitted)). "A plaintiff must 'present expert evidence of the accepted conduct of the profession and the defendant's deviation from that standard unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." *Mann*, 2012 WL 273690, at *6 (quoting *Nunsuch v. United States*, 221 F. Supp. 2d 1027, 1032–33 (D. Ariz. 2001) (in FTCA action for medical malpractice, holding Arizona law requires expert witness testimony where the negligence is not grossly apparent) (citing *Valencia v. United States*, 819 F. Supp. 1446 (D. Ariz. 1993))). "Allegations of negligence that do not require the support of expert testimony typically involve patently outrageous behavior, such as leaving instruments in the patient's body." *Id.* (citing *Rudy v. Meshorer*, 146 Ariz. 467, 706 P.2d 1234, 1237 (Ariz. Ct. App. 1985)).

Section 2604, Title 12, ARIZ. REV. STAT., establishes the criteria a person must meet to be permitted to give expert testimony on the appropriate standard of practice or care in an action alleging medical malpractice. *Id.* at *8 (citation omitted). The statute provides:

> A. In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:
>
> 1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who

is board certified in that specialty or claimed specialty.

2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to either or both of the following:

(a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.

(b) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant and, if the defendant is or claims to be a specialist, in an accredited health professional school or accredited residency or clinical research program in the same specialty or claimed specialty.

ARIZ. REV. STAT. § 12-2604. A medical expert cannot testify unless the expert is "a specialist who is board certified in the specialty or claimed specialty" of the professional against whom the expert will testify, and, during the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to either or both of (1) the active clinical practice of the same health profession as the defendant, in the same specialty or claimed specialty, or (2) the instruction of students in an accredited professional school or clinical research program in the same health profession as the defendant. *See Massara v. United States*, CV-13-00269-TUC-BPV, 2014 WL 12527303, at *2 (D. Ariz. Sept. 9, 2014) (citing ARIZ. REV. STAT. § 12-2604(A)(1), (A)(2)(a)).

Here, the parties agree[5] that since Reed is a certified EMCT-Paramedic, Plaintiffs must present testimony from an expert witness whose qualifications meet the requirements of ARIZ. REV. STAT. § 12-2604.

## V. PLAINTIFFS' EXPERTS

### a. Dr. Stephen Thornton

Stephen Thornton, M.D., is a licensed medical doctor with a subspeciality in toxicology. (Doc. 118 at p. 2, ¶ 3; Doc. 137 at p. 2, ¶ 3.) Dr. Thornton is not certified as an

---
[5] (Doc. 118 at p. 2, ¶ 5; Doc. 137 at p. 2, ¶ 5.)

- 5 -

EMCT-Paramedic, does not practice as an EMCT-Paramedic, and does not instruct paramedic students. (Doc. 118 at p. 2, ¶ 4; Doc. 137 at p. 2, ¶ 4.)

Because Reed is a certified EMCT-Paramedic, for the year 2016 (the year preceding the incident) § 12-2604(A)(2) requires Dr. Thornton to have actively been practicing as a paramedic or to have spent the majority of his professional time teaching paramedic students. (Doc. 117 at p. 8.) Defendants point out that Dr. Thornton is not a paramedic, nor does he teach paramedic students. Additionally, because Reed is a certified paramedic, any standard of care expert must likewise be a certified paramedic. Dr. Thornton is not certified as a paramedic. As such, Defendants argue that Dr. Thornton's testimony on the standard of care and breach is inadmissible and, therefore, no reasonable jury could find in Plaintiffs' favor. *Id.*

Plaintiffs do not argue that Dr. Thornton is qualified under § 12-2604 to testify as to the standard of care for a certified EMCT-Paramedic. Instead, they argue that Dr. Thornton is not being offered as a standard of care expert witness but that he is "being offered as a qualified medical expert to present his opinion and testimony about the science of medical toxicology, including the use and effects of novel psychoactive substances including hallucinogens[,] and heat stroke." (Doc. 136 at p. 12.) They insist Defendants "misleadingly claim Thornton is being specifically offered to establish that [Reed] breached the standard of care as certified paramedic" relying upon select testimony from Dr. Thornton's deposition. *Id.* at pp. 12-13. While Plaintiffs admit that Dr. Thornton believes that he can speak to the standard of care, they claim that this not the "primary reason for his expert testimony" contending:

> The scientific nature of [Dr. Thornton's] expertise in emergency medicine and medical toxicology, and in part how it is affected by heat exhaustion, is why [Dr. Thornton] is being offered as a scientific witness and testifying in this case. Accordingly, he remains an appropriate trial witness because as an [e]mergency [m]edicine physician and board certified toxicologist, [Dr.] Thornton will be able to offer his expert opinion as to the medical science on the effects of heat distress, LSD, Ketamine, and other associated factors which were responsible for David's death.

*Id.* at 13.

Rural Metro and Reed do not dispute Plaintiffs' representation that Dr. Thornton is not being offered as a standard of care expert. (Doc. 148 at p. 2, n. 1.) The Court notes, however, that Dr. Thornton opines in part: "This gross negligence in failing to follow established protocols directly led to David Cutler's death." (Doc. 118-1 at p. 17); "The decision to use Ketamine without the availability of appropriate equipment was grossly negligent." (*Id*.); "Paramedic Reed['s] decision to use [K]etamine and willfully ignore the need for immediate access to life saving equipment was below the standard care, grossly negligent and directly contributed to David Cutler's death." (*Id*. at p. 18); "Paramedic Reed did not do so[,] and this was not only below the standard of care but grossly negligent considering the obvious signs of life-threatening heat stroke David Cutler was manifesting." (*Id*.); "The administration of multiple rounds of naloxone to David Cutler was below the standard of care as naloxone is an antidote or reversal agent for the effects of opioids such as heroin of fentanyl." (*Id*.); "The administration of naloxone multiple times was below the standard of care as it was not indicated and it resulted in harm for David Cutler as more beneficial therapies such as defibrillation or assisted ventilation could have been performed during the time it took to administer naloxone." (*Id*. at p. 19); "Paramedic Reed's decision not to bring any potentially life-saving equipment with him was grossly negligent, indifferent[,] and directly led to David Cutler's death. (*Id*. at pp. 19-20.)

Dr. Thornton clearly opines on the standard of care of a certified EMTC-Paramedic. Defendants have shown that Dr. Thornton does not meet the requirements of § 12-2604(A)(1) and (2) to opine on the conduct of a certified EMCT-Paramedic and Plaintiffs have not contested this showing. As a result, Dr. Thornton's opinions on the standard of care and breach thereof of a certified EMCT-Paramedic are inadmissible.

However, in light of Plaintiffs' representation that Dr. Thornton is not being offered as a standard of care expert on Reed's actions as a certified EMCT-Paramedic, the Court will deny Rural Metro and Reed's request for summary judgment.

### b. Dr. Roy Taylor

Roy G. Taylor, Ph. D., is a police procedures expert. (Doc. 122 at p. 2, ¶ 1; Doc. 137 at p. 2, ¶ 1.) Dr. Taylor's employment as an emergency medical technician ("EMT") (non-certified paramedic) ended in 2010. (Doc. 122 at p. 2, ¶¶ 2, 4; Doc. 137 at pp. 2-3, ¶¶ 2, 4.) Dr. Taylor has never been a certified EMCT-Paramedic, he has no experience as a paramedic, he does not actively practice as an EMCT-Paramedic and he does not instruct paramedic students. (Doc. 122 at p. 2, ¶¶ 3, 5; Doc, 137 at pp. 2-3, ¶¶ 3, 5.) Dr. Taylor has never been qualified as an expert to testify on the standard of care applicable to a paramedic. (Doc. 122 at p. 2, ¶ 5; Doc. 137 at p. 3, ¶ 5.)

Defendants point out that for the year preceding David's death Dr. Taylor was not actively practicing as a paramedic nor was he, for the majority of his professional time, teaching paramedic students. As a result, they urge that Dr. Taylor does not meet § 12-2604(A)(2)'s requirements and he is not qualified to testify on the standard of care applicable to paramedics. (Doc. 121 at p. 7.) Additionally, Dr. Taylor is not a certified EMCT—Paramedic (like Reed is), so he is not qualified to offer standard of care testimony under § 12-2604(A)(1). *Id.*

As with Dr. Thornton, Plaintiffs assert Dr. Taylor is not being offered as an expert witness on the standard of care applicable to a certified paramedic. (Doc. 136 at p. 13.) Rather, they contend Dr. Taylor is being offered as a "qualified expert to present his opinion and testimony about professional standards for law enforcement and law enforcement operations under Fed. R. Evid. 702[.]" *Id.* Plaintiffs explain Dr. Taylor is a police chief with a thirty-nine-year career in law enforcement even though he has EMT, military, teaching, and police training background. *Id.*

Defendants do not dispute Plaintiffs' representation that Dr. Taylor is not being offered as a standard of care expert. (Doc. 148 at p. 2, n. 1.) The Court notes that Dr. Taylor opines on the standard of care of a certified EMTC-Paramedic:

> 40. Paramedic Reed should not have administered any type of care without first assessing Mr. Cutler's vital signs and obtaining more information about the situation. He should have also responded with airway management

> equipment and anticipated breathing difficulties as a result of administering Ketamine.

(Doc. 122-1 at p. 10, ¶ 40.)

Defendants have shown that Dr. Taylor does not meet the requirements set forth in § 12-2604 to opine on the conduct of a certified EMCT-Paramedic and Plaintiffs have not contested this showing. As a result, Dr. Taylor's opinion on the standard of care and breach thereof of a certified EMCT-Paramedic is inadmissible.

However, in light of Plaintiffs' representation that Dr. Taylor is not being offered as a standard of care expert on Reed's actions as a certified EMCT-Paramedic, the Court will deny Defendants' request for summary judgment.

### c. Guillermo Haro

Mr. Guillermo Haro ("Haro") is Plaintiffs' paramedic standard of care expert. (Doc. 120 at p. 2, ¶ 1; Doc. 137 at p. 3, ¶ 1.) Haro retired as a paramedic from the Glendale Fire Department in September 2006. (Doc. 120 at p. 2, ¶ 2; Doc. 137 at p. 3, ¶ 2.) In 2016, Haro worked part-time for the Paradise Valley Community College ("PVCC") teaching an average of 6.15 hours per week. (Doc. 120 at p. 2, ¶ 3; Doc, 137 at p. 3, ¶ 3.) Haro was the lead instructor of a pathophysiology course that he taught once per year over three eight-hours days. (Doc. 120 at p. 2, ¶ 5; Doc. 137 at p. 3, ¶ 5.) Haro's annual income from teaching for the time period of June 5, 2016 through June 5, 2017 was $8,442.90 (or 295 hours at the hourly rate of $28.62). (Doc. 120 at p. 2, ¶ 4; Doc. 147 at p. 3, ¶ 4.)

Defendants argue Haro is not qualified to testify on the standard of care of a certified EMCT-Paramedic. (Doc. 119.) Based on Haro's work history in 2016, Defendants argue that he does not meet § 12-2604(A)(2)'s requirement that an expert spend a "majority of the person's professional time" engaged in either or both of (a) the active clinical practice of the same health profession as the defendant or (b) the instruction of students in an accredited health professional school in the same specialty as the defendant. *Id*. at pp. 6-8. They point out that during the year prior to David's death, Haro was a part-time employee for PVCC teaching on average 6.15 hours per week. They also point out that in 2016, Haro

worked with the EPIC[6] Traumatic Brain Injury Project (EPIC Project) through the University of Arizona. The EPIC Project was a training course for fire departments and emergency room departments throughout the State of Arizona and does satisfy the requirements of § 12-2604.

Defendants rely upon *Zappia v. Sodhi*, 2020 WL 1026504 at *1, a case where the plaintiff needed an ICU nurse as a standard of care expert. The nurse in that case spent her professional time as an ICU nurse one-day per work and the remainder of her time was spent as a case manager and babysitting her grandchildren. *Id.* at *1-2. The Arizona Court of Appeals determined that the majority of the nurse's professional time was spent as a care manager, not as an ICU nurse and upheld the trial court's decision precluding her from testifying for her failure to meet § 12-2604(A)(2)'s majority of professional time requirement. *Id.* at *2.

Plaintiffs admit Haro will testify on the standard of care of a certified EMCT-Paramedic. (Doc. 136 at p. 14.) They argue Haro meets § 12-2604(A)(2)'s "majority of professional time" requirement because the statute "does not set any particular minimums or limits that an expert must meet." *Id.* at p. 3. They highlight that Haro spent 27 years as a firefighter paramedic with the Glendale Fire Department for the City of Glendale, Arizona. They point out that he maintains several certifications, including, a National Registry of Paramedic Level Certification, Arizona State Paramedic Certification, Basic Life Support Instructor, Pediatric Advanced Life Support and Tactical Emergency Casualty Care Instructor. After retiring in 2006, Haro spent time working as an Emergency Medical Services coordinator and senior research coordinator with the University of Arizona, College of Medicine and was a part of the EPIC Traumatic Brain Injury Project.

Plaintiffs do not dispute that in his capacity as instructor in the Emergency Medical Service/Fire Science program at PVCC Haro taught students only several hours per week. But they point out that this figure does not include Haro's preparation time for teaching (although they provide no evidence on the amount of his preparation time). *Id.* at p. 4, n.3.

---

[6] Excellence in Prehospital Injury Care (Doc. 136 at pp. 4-5.)

They distinguish *Zappia* on the grounds that in that case, the proposed expert ICU nurse worked in another profession in addition to working as an ICU nurse. They contend that here Haro did not work in other professions when he was employed as a part-time instructor with PVCC. (Doc. 136 at p. 4.) They argue the Arizona legislature did not set an hourly requirement to equate to a "majority of professional time" and, instead, chose to measure satisfaction of the statutory requirements based on what an expert individually spent the majority of his or her professional time working on. *Id*. They insist that "[w]hether it was six, eighteen, or forty hours is irrelevant because it was the majority of [Haro's] time and thus satisf[ies] the requirements of § 12-2604 as enacted by the Arizona Legislature" *Id*. at 6.

Here, the record establishes that in 2016 Haro was a part time employee for PVCC where he taught 6.15 hour per week—less than 1 workday per week. The record also establishes that Haro's other professional time was spent: (1) teaching a course in pathophysiology once per year for 3 eight-hour days; and (2) working with the EPIC Traumatic Brain Injury Project through the University of Arizona. However, there is no evidence of the amount of time Haro spent working on EPIC.[7] There is also no evidence of the amount of time that Haro spent preparing to teach his courses at PVCC.[8]

In the caselaw relied upon by the parties, the record established how much time the expert at issue spent on both qualifying work and non-qualifying work. *See, e.g.*, *Zappia*, 2020 WL 1026504, at *1-2 (proposed expert spent one day a week as an UCI nurse and "the remainder of the week working as a case manager for CIGNA Healthcare and babysitting her grandchildren"); *Hardy v. Catholic Healthcare West*, No. 1. CA-CV 09-0790, 2010 WL 5059602, at *4 (Ariz. Ct. App. 2010) (proposed expert "spent only eighteen of those fifty-eight hours engaged in active clinical practice"). Here, however, there is no

---

[7] While there is evidence that Haro received $8,800.00 for his work on the EPIC Traumatic Brain Injury Project in the year preceding David's death, there is no evidence as to how Haro was compensated (e.g., whether hourly or on a flat fee basis). As a result, the Court is unable to determine how much of Haro's professional time was spent on the EPIC Traumatic Brain Injury Project.

[8] Nor has the Court been presented with caselaw finding that it is appropriate to include course preparation time in determining whether a proposed expert satisfies § 12-2604(A)(2)(b)'s majority of professional time requirement.

evidence on how Haro spent the entirety of his professional time in the year proceeding David's death. Thus, the Court cannot determine if Haro's spent the majority of his professional engaged in qualifying work for purposes of § 12-2604.

In sum, the parties have not provided the Court with sufficient evidence for it to determine how Haro spent the majority of his professional time in the year preceding David's death. The parties will be required to supplement the record and present evidence showing how Haro spent all of his professional time in the year preceding June 5, 2017.

## VI. EXPERT TESTIMONY IS REQUIRED

Plaintiffs argue the causal connection between Reed's actions is "blatant and obvious" to the trier of fact and that expert testimony is not needed. (Doc. 136 at p. 7.) They insist there is an obvious connection between David's death and Defendants' conduct because there is no dispute that Reed injected a potentially fatal dose of Ketamine into David. *Id*. at p. 8. They claim there is no dispute that there was a "natural and continuous" sequence of events stemming from "Defendants' misconduct, which also includes the Pima County Sheriff's Department deputies' [conduct]." *Id*. They argue "[t]he shots of Ketamine and physical abuse that lead to David's death would not have occurred had it not been for Defendants' conduct while he was in their sole, uninterrupted custody." *Id*. They claim "Reed ultimately decided to take shortcuts" with respect to what is required by his administrative orders and "without conducting a thorough medical analysis of David's condition and injuries, Reed chose to inject David with Ketamine, which had lethal consequences when David's airway collapsed, and he went into respiratory arrest." *Id*. at pp. 8-9.

"*Res ipsa loquitur* is 'a rule of circumstantial evidence where the trier of fact is permitted ... to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised.'" *Mann*, 2012 WL 273690, at *8 (quoting *Brookover v. Roberts Enterprises, Inc.,* 215 Ariz. 52, 57, 156 P.3d 1157, 1162 (Ariz. Ct. App. 2007) (quoting *McWain v. Tucson Gen. Hosp.,* 137 Ariz. 356, 359, 670 P.2d 1180, 1183 (Ariz. Ct. App. 1983) (citation omitted))). "[F]or *res*

*ipsa loquitur* to be applicable, a plaintiff must show that the accident is of a kind that ordinarily does not occur in the absence of negligence, that the accident was caused by an agency or instrumentality subject to the control of the defendant, and that the plaintiff is not in a position to show the circumstances that caused the agency or instrumentality to operate to its injury." *Mann*, 2012 WL 273690, at *8 (citing *Brookover,* 215 Ariz. at 57–58, 156 P.3d at 1162–63 (citing *Lowrey v. Montgomery Kone, Inc.,* 202 Ariz. 190, 192, 42 P.3d 621, 623 (Ariz. Ct. App. 2002))). "A plaintiff who establishes the elements of *res ipsa loquitur* can avoid summary judgment and reach the jury without direct proof of negligence." *Mann*, 2012 WL 273690, at *8 (quoting *Lowrey,* 202 Ariz. at 192, 42 P.3d at 623 (citation omitted)). "Whether *res ipsa loquitur* applies is preliminarily a question of law for the court." *Mann*, 2012 WL 273690, at *8 (quoting *Lowrey,* 202 Ariz. at 192, 42 P.3d at 623 (citation omitted)).

The Court will not permit the factfinder to use circumstantial evidence "to draw an inference of negligence" from Reed's Ketamine injection. To start, Plaintiffs have not established that the effects of Ketamine on an individual in David's condition is something "which experience has shown does not normally occur if due care is exercised." Nor are Plaintiffs "not in a position to show the circumstances that caused" David's death. In the Order granting the Pima County Sheriff Department's motion for summary judgment, the Court noted that Pima County Medical Examiner Dr. Winston listed David's cause of death as hyperthermia due to LSD toxicity and exposure to the elements. Dr. Winston discussed with David's father including Ketamine as a cause of death, but he ultimately declined to do so. Expert testimony is required if Plaintiffs are to establish that Reed's actions in administering Ketamine to David (1) fell below the standard of care of a certified EMCT-Paramedic under the circumstance in which Reed encountered David and (2) contributed to his death.

Plaintiffs' reliance on *Ballesteros v. State*, 1 CA-CV 12-0005, 2013 WL 80293 (Ariz. Ct. App. 2013), does not persuade the Court otherwise. (Doc. 136 at p. 9.) There, the personal representative of the estate of a deceased inmate alleged the state breached its duty of ordinary care to provide the decedent with medical treatment. *Ballesteros*, 2013

WL 80293 at *2. The Arizona Court of Appeals determined that expert testimony on the standard of care was not necessary reasoning, "[a] typical jury would be able to determine without expert testimony whether the [s]tate controlled access to medical care in a reasonable manner so as to not subject [the decedent] to an undue risk of harm." *Ballesteros*, 2013 WL 80293 at *3. The court of appeals held that under the circumstances, the state and prison officials were not subject to a professional standard of care but that of a reasonable person. *Id.* at *3. Here, the parties agree that Reed is subject to the standard of care applicable to a certified EMCT-Paramedic. Such a standard of care is not within the everyday experience of a lay person.

### VII. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED DENYING** Defendants' motions (Docs. 117, 121) regarding Drs. Thornton and Taylor.

**IT IS FURTHER ORDERED HOLDING IN ABEYANCE** Defendants' motion (Doc. 119) regarding Guillermo Haro pending further briefing. Within **30 days** of the date of this Order, the parties shall file simultaneous briefs limited to **4 pages** in length setting forth how Guillermo Haro spent all of his professional time in the year preceding June 5, 2017. The parties may also stipulate to these facts if appropriate. The parties may not file responsive briefs unless ordered by the Court.

**IT IS FURTHER ORDERED SETTING ORAL ARGUMENT** on Defendants' motion (Doc. 119) for **August 10, 2021 at 10:00 a.m.** in the Evo A. DeConcini United States Courthouse, 405 W. Congress Street, Tucson, AZ, before the undersigned.

Dated this 29th day of June, 2021.

Honorable John C. Hinderaker
United States District Judge