# EXHIBIT A

# Frank LoVecchio, DO, MPH, FACEP, ACMT

**Board Certified, Medical Toxicology**
**Board Certified, Emergency Medicine**
**Board Certified, Addiction Medicine**
**Board Certified, Medical Forensics**
**Certified Medical Review Officer (MROCC)**

11/1/2019

Scott Reynolds
Satterlee Gibbs PLLC
3133 W. Frye Rd., Suite 101
Chandler, AZ 85226

Dear Mr. Scott Reynolds,

Per your request, the following represents my Fed. R. Civ. P. Rule 26 Report in the matter of *Cutler v. Pima County, et al*. I have reviewed the circumstances surrounding an incident ("subject incident") that occurred on or about June 5, 2017, in Pima County, Arizona, at which time David Cutler ("Mr. Cutler"), was found naked while acting in an incoherent, aggressive and combative manner towards police, fire and EMS responders.

You have asked me to provide opinions as to: 1) the use of Ketamine by EMS Rural/Metro ("R/M") during the subject incident; 2) the effects of being exposed to the desert heat and elements on Mr. Cutler; 3) the effects of lysergic acid diethylamide ("LSD") on Mr. Cutler during the subject incident; and 3) the effects of caffeine on Mr. Cutler during the subject incident.

My opinions are based upon review of the materials submitted to me by your office, my education, training, experience and review of the documents and medical records relevant in this matter, as well as my knowledge of protocols and policies of providing sedatives and dissociative anesthetics, including Ketamine, in an EMS/emergent setting. I am qualified to provide an expert opinion in this matter due to my background in EMS, medical toxicology, and emergency medicine.

By way of background, I am an Attending Physician in the Departments of Emergency Medicine, Medical Toxicology and Critical Care Medicine at Good Samaritan Regional Poison Center and Medical Center in Phoenix, Arizona. I have been Co-Medical Director of the Banner Good Samaritan Poison and Drug Information Center and currently serve as Professor in the Research Scholar Departments of Emergency Medicine, Internal Medicine, and Pharmacology at the University of Arizona, College of Medicine in Phoenix, Arizona. I previously served as a New

1

York City Emergency Medical Service Academy Physician where I started my medical career in EMS and currently provide EMS medical direction for the Phoenix Fire Department. I am currently certified by the American Board of Emergency Medicine and licensed to practice medicine in the State of Arizona. A copy of my *curriculum vitae* outlining my qualifications has been previously sent to you under separate cover.

I have included within this report a list of information that I received and acquired in this case. I have reviewed all the listed information and reserve the right to amend this report if other evidence becomes available.

**Summary of Subject Incident:**

At approximately 9:40 AM, on the morning of June 5, 2017, R/M was dispatched to the Twin Hills area of Tucson, Arizona where a Jeep belonging to Mr. Cutler was found engulfed in flames. Upon arrival, the Pima County Sherriff's Department ("PCSD") and R/M were unable to locate any individuals in the desert-area surrounding Mr. Cutler's burned-out Jeep. Later that morning, at approximately 11:40 AM, PCSD responded to a 911 call from a civilian who reported a naked man screaming in the desert. When PCSD arrived to the scene, Deputy Barnes approached the naked individual, later identified as Mr. Cutler. Mr. Cutler was noted to be "combative" and not "not following commands." In addition to being naked and delirious, Mr. Cutler was noted to be bleeding or be covered with blood on at least six body areas. Deputy Barnes restrained and handcuffed Mr. Cutler after less invasive modalities were exhausted.

At approximately 12:07 PM, R/M arrived to the scene of the subject incident and found Mr. Cutler lying naked on the ground with his hands cuffed and legs cuffed. With his hands cuffed behind him a strap extended to his lower legs, with the loose end of the strap attached to his handcuffs. Mr. Cutler was observed to be in an aggressive, agitated and combative state. His weight was estimated to be 180 lbs at that time. PCSD alerted R/M to Mr. Cutler's altered mental status and requested sedation. Mr. Cutler exhibited objective signs consistent with excited delirium syndrome and agitation. At 12:17 PM, 3 cc/150mg of Ketamine was administered intramuscularly to Mr. Cutler in each deltoid with noted fluid leakage. Shortly thereafter, Mr. Cutler's breathing slowed and his handcuffs were removed as he was strapped to the backboard of a Stokes basket. R/M crewmembers extricated Mr. Cutler down from the top of a rugged desert hill and simultaneously performed CPR on the patient. At 12:27 PM, 2mg of Narcan was administered to Mr. Cutler who was also intubated. At 12:29 PM, assisted ventilation was placed on Mr. Cutler. Mr. Cutler exhibited a Glasgow Scale Score of 3 and at 12:34 PM recorded a body temperature of 102.9 F. At 12:39 PM, .1mg of Epinephrine was administered and R/M then initiated defibrillation. At 12:44 PM, .1mg of Epinephrine and 50mg of Amiodarone was administered to Mr. Cutler, followed at 12:49 PM by 2mg of Narcan and .1 mg Epinephrine. At 12:53 PM, a last round of .1mg Epinephrine was administered. At approximately 12:57 PM, Mr. Cutler was transported to Tucson Medical Center.

2

At 1:08 PM, Mr. Cutler was pronounced dead, shortly before arriving to Tucson Medical Center. The cause of death was listed as hyperthermia. Mr. Cutler's body temperature was recorded to be 102.9 F at the time of his death.

An autopsy was subsequently performed which confirmed the cause of death (hyperthermia). A toxicology report revealed Mr. Cutler had both LSD and caffeine in his system at the time of his death. Although the toxicological results are accurate in confirming the substances noted the test is not 100% inclusive of all drugs and toxins.

**Professional Opinions and Basis for these Opinions:**

In my professional opinion, it was reasonable and appropriate for R/M to provide Mr. Cutler with Ketamine during the subject incident.

A. Patients, such as Mr. Cutler, with excited delirium and severe agitation, require rapid-acting pharmacological restraint to ensure the safety of first responders, law enforcement personnel and the patient themselves. Ketamine was the most appropriate pharmacological option to administer Mr. Cutler during the subject incident, given his agitated/combative nature and the immediate threat he posed to first responders, law enforcement personnel and himself. Furthermore, Ketamine was the only pharmacological option available to R/M at the time of the subject incident.

B. Had Mr. Cutler been exhibiting classic symptoms of hyperthermia then more likely than not he would have been comatose and not the behavior he was demonstrating on the video, etc.

C. In contrast to benzodiazepines and/or antipsychotic agents, Ketamine can provide rapid sedation without the loss of airway reflexes, hypoventilation, un-wanted hypotension, or elevated body temperature. In those individuals such as Mr. Cutler exhibiting signs of excited delirium, a main concern of EMS providers is to ensure the patient does not experience respiratory distress and arrest. Ketamine preserves airway reflexes and respiratory drive in a way no other drug can, making it reasonable and appropriate to use during the subject incident.

D. A dose of Ketamine, given intramuscularly, should generally be expected to produce sedation in a patient within a few minutes, with a duration of at least 20-30 minutes. In a patient, such as Mr. Cutler, who exhibited extreme agitation and combativeness, Ketamine would have been the fastest-acting emergency medication available to R/M, making its use necessary, reasonable and appropriate.

E. In the doses which were administered during the subject incident, Ketamine would not cause respiratory depression. In this case, the intramuscular injection of Ketamine, as

3

    documented, would not have caused respiratory distress in Mr. Cutler. Therefore, it was reasonable and appropriate for R/M to use Ketamine in order to prevent respiratory distress in the patient.

F. Ketamine would not have led, caused or contributed to the elevated body temperature recorded in Mr. Cutler during the subject incident.

G. All doses of Ketamine administered by R/M throughout the duration of the subject incident were reasonable and appropriate, considering the circumstances.

H. All medications administered by R/M throughout the duration of the subject incident were reasonable and appropriate, considering the circumstances.

I. The only other alternative emergency medication one could have provided Mr. Cutler during the subject incident would have been Versed (midazolam), or a similar benzodiazepine. However, benzodiazepines can cause significant respiratory depression, which would make a reasonable EMS responder reluctant to administer in a patient, such as Mr. Cutler, exhibiting signs of excited delirium. Further, per Northwest Medical Center protocol, Versed, or a similar benzodiazepine, would not have been an approved emergency medication available for use by R/M at the time of the subject incident.

In my professional opinion, Mr. Cutler's prolonged exposure to the heat and desert elements before and during the June 5, 2017 subject incident, more likely than not, raised his body temperature and was the most important factor in causing hyperthermia in the Decedent.

In my professional opinion, the LSD present in Mr. Cutler's system during the subject incident and confirmed in the post-mortem toxicology report, more likely than not, raised his body temperature and caused hyperthermia in the Decedent.

In my professional opinion, the LSD that was present in Mr. Cutler's system during the subject incident and confirmed in the post-mortem toxicology report, caused the Decedent to experience signs of excited delirium, anxiety or fearfulness, paranoid thinking, physical or psychological discomfort, impaired judgment, and an altered mental state.

In my professional opinion, the caffeine present in Mr. Cutler's system during the subject incident and confirmed in the post-mortem toxicology report, more likely than not, caused anxiety, raised the body temperature, caused dehydration and contributed to the heat-stroke and excited delirium in the Decedent.

In this report, I have outlined my opinions based on the information I have reviewed thus far in this case. As additional information is made available to me, my opinions may be updated to reflect

this new information. The facts and opinions contained in this report are true and correct to the best of my knowledge.

In conclusion, it is my opinion to a reasonable degree of medical/toxicological probability that it was appropriate for R/M to use Ketamine in rendering emergency medical services to Mr. Cutler during the subject incident. It is also my opinion to a reasonable degree of medical/toxicological probability that all medications administered by R/M to Mr. Cutler during the subject incident were reasonable, necessary and appropriate.

Further, it is my opinion to a reasonable degree of medical/toxicological probability that exposure to the heat and elements, coupled with LSD and caffeine in Mr. Cutler's system during the subject incident and confirmed in the post-mortem toxicology report, caused or contributed to the increase in body temperature which led to the development of hyperthermia in the patient and ultimately caused Mr. Cutler's death.

**Information Considered in Formulating the Above Opinions**

1. Complaint;
2. Rural/Metro Patient Care Report (CUTLER/RM 0001-00012);
3. Rural/Metro Fire Incident Report (Man in Desert)(CUTLER/RM 0013-0015);
4. Rural/Metro Fire Incident Report (Jeep Fire) (CUTLER/RM 0016-0020);
5. Pima County Sheriff's Department Incident Report (CUTLER/RM 0100-00464)
6. Pima County Sheriff's Department Detail Incident Report (Pima County 000027-000041)
7. Autopsy Report (CUTLER/RM 0021-0027);
8. Toxicology Report (CUTLER/RM 0028-0032);
9. Plaintiff's Preliminary Expert Witness Affidavit (Donald Locasto);
10. Protective Order;
11. Arizona Department of Health Services Supplemental Response to Subpoena, including case report and investigation by Dr. Bentley Bobrow (CONFIDENTIAL)(CUTLER/RM 0474-0482);
12. Northwest Medical Center's Excited Delirium Administrative Order (CONFIDENTIAL) (CUTLER/RM 0469)
13. Text messages and Snapchats between David and girlfriend on date of incident.
14. Bruce Evans Expert Report;
15. Guillermo Haro Expert Report (Cutler Expert);
16. Deposition of Grant Reed (Paramedic)
17. Deposition of Vince Figueroa (EMT);
18. NWMC Response to Subpoena;
19. Arizona Department of Health Services Response to Subpoena;
20. Deposition of Dr. Bentley Bobrow;
21. Deposition of Keith Barnes (Pima County Sheriff);
22. Photo Map Aerial Scene With Locations Labeled;

23. Videos of David Cutler;
24. Drone footage of incident area
25. Deposition of Deputy Davenport;
26. Deposition of David Winston, PhD.

**Attachments**

Attached and made a part of this report are my curriculum vitae and a list of cases I have testified, by deposition and/or during trial, in the past four years.

**Compensation**

A. $375.00/hour to review charts, literature and discuss matter;
B. $400.00/hour for deposition and trial, 2 hour minimum and 24-hour cancellation plus reasonable travel expenses;
C. The current total charges for my work on this case to date is ~ $3750

Sincerely,

Frank LoVecchio, D.O., M.P.H., F.A.C.E.P, ABMT.