**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Steven Cutler, | No. CV-18-00383-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' "Motion to Modify Joint Pretrial Order" ("Motion") (Doc. 251). The Motion seeks to add a claim for punitive damages to the Joint Pretrial Order (Doc. 188). For the reasons below, the Court denies the Motion.

**I.   Background**

On September 30, 2022, Defendants moved in limine to preclude Plaintiffs from asserting an untimely punitive damages claim. (Doc. 226 at 2.) On October 28, at oral argument, the Court denied Defendants' motion as moot because no punitive damages claim appeared in the Pretrial Order. (Doc. 252; Doc. 188.)

On November 1, Plaintiffs filed the Motion to amend the Pretrial Order and add a punitive damages claim. (Doc. 251.) The Court ordered supplemental briefing (Doc. 254); Plaintiffs filed a Supplement (Doc. 256); Defendants filed a Response (Doc. 258); and Plaintiffs filed a Reply (Doc. 264). Trial begins November 29.

**II.   Legal Standard**

The Court may modify a final pretrial conference order "only to prevent manifest

injustice." Fed. R. Civ. P. 16(e). The Ninth Circuit instructs its district courts generally to "allow amendments of pretrial orders when no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27–28 (9th Cir. 1980). A district judge has "broad discretion in supervising the pre-trial phase of litigation, with a view toward sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law." (*Id.* (quoting *FDIC v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971)).

## III. Analysis

### a. The punitive damages claim is futile.

A punitive damages claim should go to the jury "when the evidence supports such a claim." (Doc. 251 at 2 (citing *Preayer v. Ryan*, 2017 WL 2351601, *6 (D. Ariz. May 31, 2017).) In Arizona, the evidence may support punitive damages claim where a defendant acts with an "evil mind." *Swift Transportation Co. v. Carman*, 253 Ariz. 499, ¶ 23 (Ariz. Aug. 23, 2022). Establishing "an evil mind requires clear and convincing evidence that the defendant's actions . . . were outrageous, creating a 'substantial risk of tremendous harm to others.'" *See id.* at ¶¶ 22–23 (citation omitted). An evil mind requires "something more" than negligence or even gross negligence. *Id.* at ¶ 30. It requires "outrageous, oppressive or intolerable" conduct evidencing a "*conscious* and *deliberate* disregard of the interest[s] and rights of others." *Id.* at ¶ 24 (emphasis in original).

Here, the evidence is insufficient as a matter of law to establish by clear and convincing evidence that Defendant Reed's actions were "outrageous." Plaintiffs emphasize several items of evidence to try to bolster their case. (Doc. 256 at 1–3). For example, Plaintiffs allege Reed went up the hill to David Cutler with a syringe of Ketamine, having decided in advance its use was warranted. (*Id.* at 3.) Plaintiffs also allege David Cutler's appearance when Reed arrived indicated hyperthermia rather than a need for Ketamine, but Reed nevertheless ignored the hyperthermia and proceeded to administer Ketamine. (*Id.*) Plaintiffs also allege Reed administered Ketamine without certain required

resuscitative equipment, and may have injected more than the established limit. (*Id.* at 2.) Plaintiffs also allege David Cutler's respiratory arrest was "the exact risk identified" for Ketamine administration, and Reed could not adequately treat it for lack of proper equipment on hand. (*Id.*) Finally, Plaintiffs allege that Reed's statement that he "would do it the exact same way" again indicates Reed "has not learned his lesson," and poses a threat to future patients. (*Id.* at 3–4.)

These allegations do not amount to "outrageous" conduct for several reasons. First, Plaintiffs' evidence, even if proved, likely establishes Reed's behavior created only a risk of harm, not a "*substantial*" risk of harm. Plaintiffs refer to respiratory depression as "an adverse effect" of Ketamine, and to excessive salivation as "a potential adverse effect" of Ketamine, but do not allege these effects are highly likely or substantially certain. (*See* Doc. 256 at 1–2.) Second, Plaintiffs' evidence, even if proved, cannot establish "*conscious*" and "*deliberate*" disregard of David Cutler's interests. Any course of emergency treatment involves risk. Healthcare providers must act with incomplete information in highly uncertain environments. They do not disregard a person's interests merely by making a judgment call under difficult, emergency circumstances. Failing to act or acting differently would involve other risks. In hindsight, the balance may be clearer. But liability does not follow armchair clarity. Plaintiffs' evidence arguably tends to show that Reed consciously chose a course of treatment with certain risks over other courses of treatment with other risks. That is not enough for conscious or deliberate disregard. Third, Plaintiffs' evidence does not establish "something more" than gross negligence. In *Swift*, a driver's knowing breach of a truck driving safety protocol that caused several deaths was "at most . . . negligence." 253 Ariz. at ¶ 34. Here, Reed's alleged breach of Ketamine protocol, even when combined with other evidence and viewed most charitably for Plaintiffs, may establish gross negligence, but cannot establish that Reed acted with an "evil mind."

Finally, Plaintiffs' evidence does not indicate "outrageous" conduct because Reed's statements—viewed in context—do not suggest a threat to future patients. Reed's reference to doing things "the exact same way" occurred in testimony where he discussed the

judgment calls paramedics often make with limited information. (Doc. 258 at 6–7.) In context, Reed means he would approach the situation the same way again, trying to "figure out the 3,000 possibilities" that might contribute to David Cutler's symptoms and making a judgment call in "just a snap second." (*Id.* at 7.) Moreover, Reed repeats that he became a paramedic to help people, that he wanted to help David Cutler, and that he feels "awful for the family." (*Id.*) And he repeats that he would "do it again *to try to help* [David]." (*Id.* (emphasis added).) These statements undermine any claim that Reed acted with an "evil mind" when he said he would do things the same way again.

For these reasons, Plaintiffs should not be permitted to submit a punitive damages to the jury. The evidence does not sufficiently support a punitive damages claim or present an "honest dispute of fact or law." And because a punitive damages claim is futile, the Court's refusal to add the claim cannot result in injustice to Plaintiffs.

### b. The punitive damages claim is prejudicial.

Even if Plaintiffs' evidence could support a punitive damages claim, amending the Pretrial Order now to include punitive damages would prejudice Defendants. Trial is in twelve days. Plaintiffs' Motion is just too late.

## IV. Order

Accordingly,

**IT IS ORDERED DENYING** Plaintiffs' Motion (Doc. 251).

Dated this 17th day of November, 2022.

_____
Honorable John C. Hinderaker
United States District Judge